IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| KENT H. PAYNE, Individually and as the Administrator of the Estate of JORDAN KENT PAYNE and LESLIE KING-PAYNE, | ) ) ) ) | CASE NO. 4:21-cv-00349 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | **DEFENDANTS EYERLY-BALL COMMUNITY HEALTH SERVICES AND SCOTT THOMAS'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| JOHN WEAKLAND, JASON BARNES, MADISON COUNTY, IOWA, EYERLY-BALL COMMUNITY MENTAL HEALTH SERVICES and SCOTT THOMAS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

COME NOW the Defendants, Eyerly-Ball Community Mental Health Services ("Eyerly-Ball) and Scott Thomas, pursuant to Federal Rule of Civil Procedure 56, LR 56(a)(2) and 7(d), and for their Brief in Support of Motion for Summary Judgment, state as follows:

## TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................... 2

**BRIEF FACTUAL BACKGROUND** ........................................................................................ 2

**STANDARD OF REVIEW** ....................................................................................................... 4

**ARGUMENT** ............................................................................................................................... 5

   **I.   DEFENDANTS EYERLY-BALL AND SCOTT THOMAS ARE ENTITLED TO QUALIFIED IMMUNITY** ......................................................................................................... 5

   **II.    PLAINTIFFS' FEDERAL DELIBERATE INDIFFERENCE CLAIMS AGAINST DEFENDANTS SCOTT THOMAS AND EYERLY BALL SHOULD BE DISMISSED AS A MATTER OF LAW** ............................................................................................................... 7

      **A.    Plaintiff's Cannot Establish That Scott Thomas Acted With Deliberate Indifference to Payne's Risk of Suicide** ............................................................................... 7

1.   Thomas Could Not Have Been Deliberately Indifferent for Failing to Properly Conduct a Mental Health Evaluation of Payne or Failing to Take Appropriate Steps to Place Payne Under Additional Supervision at the Jail............................................................................................ 11

2.   Thomas's Actions in Addressing Payne's Mental Health Situation Were Reasonable ....... 13

**B.   Plaintiffs Cannot Establish That Eyerly-Ball Acted With Deliberate Indifference to Payne's Risk of Suicide**................................................................................................... 16

1.   There is no Evidence That Eyerly-Ball Failed to Properly Train, Supervise, or Discipline Scott Thomas or any Other Employee With Respect to Suicide Prevention .......................... 17

2.   There is no Evidence That Eyerly-Ball Carries Out a Policy or Custom With Deliberate Indifference to Jail Inmates' Risk of Suicide .......................................................................... 20

**C.   Even if Scott Thomas or Eyerly-Ball Acted With Deliberate Indifference, Plaintiffs Cannot Establish That Such Deliberate Indifference Caused Payne's Death** 22

**III.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' REMAINING CLAIMS** ...................................... 25

**CONCLUSION**................................................................................................................ 25

## INTRODUCTION

Establishing a claim of deliberate indifference "is a difficult burden for a plaintiff to meet." *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998). In this matter, the indisputable facts demonstrate that Plaintiffs are unable to meet the high bar to establish that either Scott Thomas or Eyerly-Ball acted with deliberate indifference to Jordan Payne's risk of suicide. Even if Plaintiffs were able to establish deliberate indifference on the part of Thomas or Eyerly-Ball, Plaintiffs cannot establish that any deliberate indifference caused Plaintiffs' death by suicide. As such, Plaintiffs' federal constitutional claims for deliberate indifference against Thomas and Eyerly-Ball must be dismissed.

## BRIEF FACTUAL BACKGROUND

Defendants Scott Thomas and Eyerly-Ball incorporate their Statement of Material Facts by reference, as if set forth fully herein. Generally speaking, the Statement of Facts provided herewith establish that Eyerly-Ball is under contract to provide Jail Diversion

Services to the Madison County Jail and that Eyerly-Ball employs Scott Thomas as a Jail Diversion Case Manager. (Defs' SOF, ¶¶ 7-8). In that position, Mr. Thomas interviews those inmates identified by the Madison County jail or who request mental health services in the Madison County jail to determine their mental health needs and wants, particularly after release. (Id. at ¶¶ 8-18). Mr. Thomas assists in coordinating mental health services with other providers, including Madison County's contracted telehealth mental healthcare provider Integrated Telehealth Partners. (*Id.* at ¶¶ 38-41).

With respect to Jordan Payne, Mr. Payne was arrested on a warrant for contempt of court on or about June 9, 2020. (*Id.* at ¶ 28). Mr. Thomas and Eyerly-Ball first became aware of Mr. Payne when notified via email from the Madison County jail at 9:41 a.m. that Mr. Payne wanted to see him. (*Id.* at ¶ 30). Mr. Thomas met with Mr. Payne for approximately 30 minutes on June 12, 2022, from 1:30–1:54 p.m. (*Id.* at ¶ 31). During the interview, Mr. Thomas collected information on Mr. Payne's mental health history and medications. Mr. Payne denied any intent to harm himself while in the jail multiple times. (*Id.* at ¶¶ 33-35). Mr. Thomas advised Mr. Payne he would set him up for the first available mental health appointment with a qualified mental health professional. (*Id.* at ¶ 36). Following the interview, Mr. Thomas accurately reported to jailers that Mr. Payne denied any intent to harm himself while in the jail. (*Id.* at ¶ 37). Mr. Thomas immediately scheduled Mr. Payne for the first available mental health appointment, to take place less than 90 minutes after the meeting concluded. (*Id.* at ¶ 38). Mr. Thomas then notified the jail of that appointment via email and phone call. (*Id.* at ¶ 39). Mr. Payne committed suicide by hanging in his cell before his scheduled appointment. (*Id.* at ¶ 42).

Mr. Payne's parents brought suit on November 8, 2021. *See* Dkt. No. 1, Compliant. They allege, amongst other claims, federal constitutional claims for deliberate indifference to Jordan Payne's serious medical needs.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c)(2) sets forth the circumstances under which summary judgment should be granted:

> "The judgment should be rendered at the pleadings, the discovery, and disclosure materials on file, and any Affidavits show that there is no genuine issue as to any material fact and the Movant is entitled to judgment as a matter of law."

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the dispute over it might affect the outcome of the suit under governing law. *Id.* The moving party has the burden of demonstrating the absence of a genuine issue of material fact with affidavits, depositions, answers to interrogatories, and admissions. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court should "view the evidence in light most favorable to the non-moving party and give that party the benefit of all reasonable inferences." *The United States v. City of Columbia*, 914 F2d 151, 153 (8th Cir. 1990). Still, the non-moving party cannot rely on mere allegations or denials. *Krenik v. County of LeSuer*, 47 F3d 953, 957 (8th Cir. 1995). The non-moving party must instead demonstrate the existence of specific facts that create a genuine issue for trial.

## ARGUMENT

## I.   DEFENDANTS EYERLY-BALL AND SCOTT THOMAS ARE ENTITLED TO QUALIFIED IMMUNITY

In general, 42 U.S.C. section 1983 creates a civil cause of action for deprivations of constitutional rights caused by persons acting under color of any statute or ordinance of any state or territory in the United States. Here, Plaintiffs assert Federal Constitutional Claims against Eyerly-Ball and Thomas based on alleged violation of Payne's Eighth Amendment rights. Qualified immunity "shield[s] government officials in the exercise of their discretionary functions." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000).[1] The purpose of qualified immunity is to "protect officials from the expense of frivolous suits that would unduly inhibit them in discharging their duties." *Id.*

"Qualified immunity protects a government official from liability in a [section] 1983 claim unless his or her conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known." *Foster v. Anderson*, 165 F. Supp. 3d 781, 788 (N.D. Iowa 2016)(Judge L. Strand quoting *Vaughn v. Greene County, Ark.,* 438 F.3d 845, 849 (8th Cir.2006). An "official is protected by qualified immunity so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " *Id.* (quoting *Anderson v. Creighton*, 83 U.S. 635 at 638 (1987)); *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003) ("A government official is shielded by qualified immunity from suit for

---

[1] While generally only government employees and entities may be held liable for constitutional violations and protected by qualified immunity, non-government actors acting under color of state law are treated as government actors for purposes of the qualified immunity and deliberate indifference inquiries. *See, e.g., West v. Atkins*, 487 U.S. 42, 54 (1988) (holding that a physician who contracted with the state to provide medical services to prison inmates acted under color of state law for purposes of § 1983 when undertaking his duties in treating the inmate's injury such that he could be held liable under the 8th Amendment for deliberate indifference).

damages if a reasonable official could have believed his or her conduct to be lawful, in light of clearly established law and the information possessed by the official."). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Luckert v. Dodge County*, 648 F.3d 808, 817 (8th Cir. 2012). "Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.' " *Id.*

Given the heightened protections afforded those acting under color of state law, Plaintiffs must demonstrate that Defendants were "deliberately indifferent" to a known risk that Payne would commit suicide and that such deliberate indifference caused Payne to commit suicide *Gregoire*, 236 F.3d at 417; *Yellow Horse v. Pennington County*, 225 F.3d 923, 927 (8th Cir. 2000). Thus, where no deliberate indifference is shown, no constitutional liability attaches. *See, e.g.*, *Harris v. Corizon, LLC*, No. 20-3094, 2022 WL 1448209, *3 (8th Cir. May 9, 2022) (recognizing that section 1983 actions apply to private actors employed by a state to provide medical services to prison inmates under *West v. Atkins* but affirming summary judgment in favor of the contracted medical provider because the plaintiff failed to identify any policy, custom, or official action amounting to deliberate indifference that caused him an actionable injury).

As applied here, established by the Statement of Undisputed Facts, and discussed in greater detail in the balance of this brief, Plaintiffs are unable to establish deliberate indifference. Scott Thomas was asked to meet with Mr. Payne at 9:41 a.m. on June 12, 2020. He met with him for approximately 30 minutes, between 1:30 p.m. and 2:00 p.m. During that meeting, Mr. Payne repeatedly denied any suicidal ideation or intent to cause harm while in the jail. By 2:18 p.m., Mr. Thomas had confirmed with the jail that he had an appointment for

Mr. Payne to see a psychiatrist at 3:30 p.m.—less than 90 minutes after their meeting. Under these undisputed circumstances, Plaintiffs' cannot possibly establish deliberate indifference to a *known* suicide risk. There can be no showing of deliberate indifference and both Thomas and Eyerly-Ball are entitled to qualified immunity.

## II. PLAINTIFFS' FEDERAL DELIBERATE INDIFFERENCE CLAIMS AGAINST DEFENDANTS SCOTT THOMAS AND EYERLY BALL SHOULD BE DISMISSED AS A MATTER OF LAW

Count I of Plaintiffs' Complaint asserts a Federal Constitutional claim against Scott Thomas, an Eyerly-Ball employee, as well as Madison County, the Madison County Sheriff, and a Madison County Jailer based on alleged deliberate indifference to Payne's risk of suicide in violation of Payne's Eighth Amendment rights. Count II of Plaintiffs' Petition asserts a Federal Constitutional *Monell* claim, wherein Plaintiffs allege that both Madison County and Eyerly-Ball failed to establish policies, practices, and procedures and/or have failed to properly train, supervise and/or discipline their employees, which constituted deliberate indifference to Payne's risk of suicide.

Plaintiffs' claims against Thomas and Eyerly-Ball should be dismissed, as Plaintiffs' cannot meet the high bar to show that either Thomas or Eyerly-Ball acted with deliberate indifference to Payne's risk of suicide, nor can they establish that any deliberate indifference on the part of Thomas or Eyerly-Ball proximately caused Payne's death by suicide.

## A. Plaintiff's Cannot Establish That Scott Thomas Acted With Deliberate Indifference to Payne's Risk of Suicide

Plaintiffs allege that Defendants Thomas, Weakland, and Barnes had actual knowledge that Payne faced a substantial risk of self-harm or suicide and failed to respond reasonably to that known risk. (Complaint, ¶¶ 98-100; Dkt. No. 1). The undisputed facts, however,

demonstrate that Plaintiffs cannot meet their high burden to prove Thomas acted with deliberate indifference to Payne's risk of suicide.

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). According to the United States Supreme Court, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In other words, deliberate indifference can be established if the jailers "[knew] of and disregard[ed] an *excessive* risk to [plaintiff's] health or safety." *Yellow Horse v. Pennington Cnty.*, 225 F.3d 923, 927 (8th Cir. 2000)(emphasis added). Deliberate indifference "is a difficult burden for a plaintiff to meet." *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998).

A finding of deliberate indifference requires a showing that the official was subjectively aware of the risk. *Farmer*, 511 U.S. at 829. Thus, according to the Supreme Court, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. The official must also act highly unreasonably in disregarding the known risk. "Deliberate indifference is more than negligence, more even than gross negligence ...." *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014). "In contrast to negligence, deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). "The level of culpability required to demonstrate deliberate

indifference on the part of prison officials is equal to criminal recklessness." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011).

In the context of medical risks, to prove deliberate indifference, the plaintiff must show that they suffered from an objectively serious medical need and that the corrections officials acted with a sufficiently culpable state of mind, namely, that they actually knew of, but deliberately disregarded, [plaintiff's] medical need[ ]." *Washington v. Denney*, 900 F.3d 549, 559 (8th Cir. 2018) (citations omitted). In other words, the plaintiff must show: "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019). Once an inmate is classified as a suicide risk, the right to be protected from that risk falls under the ambit of the Eighth Amendment right to have medical needs addressed. *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998); *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("[A] risk of suicide by an inmate is a serious medical need.").

Courts have recognized the difficulties in preventing all jail suicides, and the fact that a suicide occurs does not mean that there was deliberate indifference. According to the Eighth Circuit Court of Appeals, "[w]here suicidal tendencies are discovered and preventive measures taken, the question is only whether the measures taken were so inadequate as to be deliberately indifferent to the risk." *Rellergert by Rellergert v. Cape Girardeau Cnty., Mo.*, 924 F.2d 794, 796 (8th Cir. 1991). The Court "must objectively consider[ ] the measures taken in light of the practical limitations on jailers to prevent inmate suicides." *Id.* Thus, where jail officials recognize an inmate's suicide risk and take some deliberate measures, although perhaps not perfect measures, to prevent the suicide, they cannot be said to have been deliberately indifferent to

the risk of suicide. *Id.* at 797 (stating that "we cannot say that the law is established with any clarity as to what ... measures must be" taken to prevent inmate suicides and concluding that taking "affirmative and deliberate steps to prevent suicides" precludes a finding of deliberate indifference).

Thus, in *Liebe*, the Eighth Circuit held that a prison guard did not act with deliberate indifference in failing to prevent an inmate's suicide where he classified the inmate as a suicide risk, took preventative measures of placing him in the temporary holding cell and removing his shoes and belt, and periodically checking on him. *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998). As explained by the Court, "[w]hile [the jailer] may have been negligent in not checking on [plaintiff] more often, or in failing to notice the exposed electrical conduit in the temporary holding cell, we cannot say as a matter of law that his actions were indifferent. To the contrary, [the jailer's] actions constituted affirmative, deliberate steps to prevent [plaintiff's] suicide. Despite [the jailer's] ultimate failure to prevent that suicide, [he] did not act with deliberate indifference. *Id.*

Similarly, the Eight Circuit in *Rellergert* found that measures taken by the defendants to prevent an inmate's suicide by placing him in a common area where he could be observed did not demonstrate deliberate indifference to his serious medical needs as a suicide risk despite the fact that the jailer tasked with observing the inmate was occupied with processing a new criminal and thus let the inmate out of his sight at the time of suicide. *Rellergert by Rellergert v. Cape Girardeau Cnty., Mo.*, 924 F.2d 794, 798 (8th Cir. 1991). According to the Court, while a jury might reasonably conclude that the jailer acted negligently, wrongly, or imprudently, such actions did not amount to deliberate indifference. *Id.*; *See also Tiessen v. Cnty. of Pine*, 2000 WL

34494819, *6 (D. Minn. Aug. 14, 2000), *aff'd sub nom. Tiessen v. Cnty. of Pine, MN*, 15 F. App'x 388 (8th Cir. 2001) (County jail did not act with deliberate indifference in preventing a suicide when they took deliberate steps to protect the plaintiff's safety, such as placing him in a well-traveled area of the jail, placing him in a cell with another person, ascertaining his condition several times, and observing his condition to be normal just minutes before the suicide); *Minix v. Canarecci,* 597 F.3d 824, 828–29, 833 (7th Cir. 2010) (concluding a nurse's decision to remove a pretrial detainee from a suicide watch and from medical segregation despite knowing the inmate had twice attempted suicide, once in the previous month, did not show deliberate indifference, even if the decision showed poor judgment).

1. <u>Thomas Could Not Have Been Deliberately Indifferent for Failing to Properly Conduct a Mental Health Evaluation of Payne or Failing to Take Appropriate Steps to Place Payne Under Additional Supervision at the Jail</u>

As an initial matter, the reasonableness of Thomas's actions must be evaluated in light of the scope of his duties and the extent of his involvement with Payne.  Plaintiffs claim that Thomas failed to properly conduct a mental health evaluation of Payne and failed to take appropriate steps to place Payne under additional supervision at the jail. Such assertions are based on the false assumptions that "[p]art of Defendant Thomas employment duties with Eyerly-Ball was to provide mental health evaluations for those individuals housed at the Madison County Jail" and that Thomas had the authority to place inmates under additional supervision or in any way direct the jail to do so. (*See* Complaint, ¶ 67; Dkt. No. 1).

However, Thomas does not provide mental health evaluations to inmates housed at Madison County Jail or any other jail.  (*See* Defs' SOF ¶¶ 8-18). His role is limited to referring inmates to qualified mental health professionals. (*Id.*). In his role as a Jail Diversion Case

11

Manager employed by Eyerly-Ball, it is Thomas's responsibility to screen individuals for possible mental health concerns, discuss with those individuals what options are available for mental health services, and then refer the individuals to the appropriate services. (*Id.* at ¶ 11). Mr. Thomas is not a mental health professional who engages in evaluating and treating inmates' mental health issues but is simply an information gatherer who serves as a liaison and refers inmates to the appropriate mental health professionals. (*Id.* at ¶¶ 14-15). As a Jail Diversion Case Manager, it was not Thomas's role to conduct suicide risk assessments at the jail. (*Id.* at ¶ 16). Rather, he was to connect inmates to the appropriate services based on his conversation with them. (*Id.* at ¶ 17). Additionally, it is not within Thomas's scope of practice as a Jail Diversion Case Manager to advise or direct the jail with respect to how to properly handle an inmate's medical condition or a perceived risk to the inmate's health or safety. (*Id.* at ¶ 18).

Thus, Thomas did not act unreasonably in failing to perform a suicide risk assessment or a mental health evaluation because it was not his job to do so. Thomas met with Payne only to determine whether Payne was in need of any mental health services and direct him towards the appropriate services, not to assess his suicide risk or evaluate his mental health. It would have been ITP's responsibility to evaluate Payne's mental health and conduct a suicide risk assessment during the psychiatric appointment that Thomas had scheduled for Payne with a psychologist from ITP.

Thomas also did not act unreasonably in failing to place Payne on suicide watch or under increased supervision because it is not within his authority or scope of practice to advise or direct the jail to take certain actions with respect to inmates. Similarly, as a Jail Diversion

Case Manager and not a mental health professional, Thomas is not capable of "clearing" an inmate from a mental health perspective, nor did he do so in this case with Payne. Therefore, Plaintiffs' deliberate indifference claim cannot be based on allegations that Thomas failed to properly conduct a mental health evaluation of Payne and failed to take appropriate steps to place Payne under additional supervision at the jail. Such actions were simply not within Thomas's purview.

2. <u>Thomas's Actions in Addressing Payne's Mental Health Situation Were Reasonable</u>

When viewing Thomas's actions in light of his limited role as a Jail Diversion Case Manager tasked with connecting Payne to the appropriate mental health services, it is even more clear that Thomas's actions do not meet the extremely high level of culpability equal to criminal recklessness that is required in order to establish deliberate indifference. Indeed, Thomas took "affirmative and deliberate steps" to get Payne the mental health attention that he needed in a timely manner. *Rellergert by Rellergert v. Cape Girardeau Cnty., Mo.*, 924 F.2d 794, 797 (8th Cir. 1991). Before his screening interview with Payne concluded, Thomas informed Payne multiple times that he would schedule him the first available appointment with a psychiatrist so he could get mental health help. (Defs' SOF, ¶ 36). Thomas followed through on this promise and scheduled Payne for the first available appointment with a psychiatrist from ITP, which was to take place at 3:30 p.m., approximately ninety minutes after Thomas's screening interview with Payne concluded. (*Id.* at ¶ 38). Thomas then notified the Madison County jail via email and telephone that Payne was scheduled for a psychiatric appointment at 3:30 p.m. in order to ensure that Payne would attend the appointment. (*Id.* at ¶ 39). Such "affirmative and deliberate steps" toward preventing Payne from committing self-harm or

suicide by setting him up for the proper mental health treatment within an extremely short amount of time precludes any finding that Thomas acted with a deliberate indifference to Payne's risk of suicide. *Rellergert*, 924 F.2d at 797.

Further, Thomas's communications with jailer Weakland about what he had observed during the screening interview with Payne were reasonable under the circumstances. During the screening interview, Payne told Thomas several times that he did **not** intend to commit suicide while in jail. (Defs' SOF at ¶¶ 33-35). Specifically, Payne stated "**I don't want to kill myself or nothin' like that** but I got these thoughts in my head that are like, shoot my brains out, I mean, sh*t like that, like I don't want those thoughts in my head." (*Id.* at ¶ 33). Later in the screening interview, Payne told Thomas, "**I'm not 'gonna kill myself here**. But I can't guarantee I won't kill myself when I leave here." (*Id.* at ¶ 34). Payne subsequently stated, "I don't want to go on suicide watch. . . (inaudible). . . kill myself here. I don't want to. I'm not 'gonna get into that. **I don't want to kill myself in general**." (*Id.* at ¶ 35). After the interview concluded and before leaving the jail, Thomas notified jailer Weakland of exactly what Payne had told him during the interview – *i.e.,* that Payne did not want to kill himself while in jail but that he was unsure about things outside of jail. (*Id.* at ¶ 37). Thus, the information that Thomas relayed to jailer Weakland was an accurate description of what transpired during the interview and in fact was an additional "affirmative step" towards preventing Payne's suicide given that he sufficiently put the jail on notice that Payne was potentially considering self-harm or suicide, at least outside of jail.

The question for the court is not whether Thomas *could* have informed jailer Weakland of additional details regarding some of Payne's comments during the screening interview,

including statements such as "I'm not in good shape right now," "I've got nothing left," or "I've had seven suicide attempts in the last year." (*See* Complaint, ¶ 72; Dkt. No. 1). Rather, the question is whether the measures he did take were "so inadequate as to be deliberately indifferent to the risk" that Payne may commit suicide. *Rellergert*, 924 F.2d at 796. Here, as discussed, Thomas's actions in relaying information to jailer Weakland were reasonable, especially considering that Payne explicitly stated three times that he did not want to kill himself. Even if Thomas was somehow negligent in failing to convey the seriousness of Payne's suicide risk to the jail (which it was not his role to evaluate, nor is he qualified to do so), Plaintiffs cannot establish the extremely high bar necessary to show deliberate indifference. *Liebe*, 157 F.3d at 578 ("[w]hile [the jailer] may have been negligent in not checking on [plaintiff] more often, or in failing to notice the exposed electrical conduit in the temporary holding cell, we cannot say as a matter of law that his actions were indifferent."); *Rellergert*, 924 F.2d at 798 (while a jury might reasonably conclude that the jailer acted negligently, wrongly, or imprudently, such actions did not amount to deliberate indifference); *Minix*, 597 F.3d at 833 (concluding a nurse's decision to remove a pretrial detainee from a suicide watch and from medical segregation despite knowing the inmate had twice attempted suicide, once in the previous month, did not show deliberate indifference, even if the decision showed poor judgment).

In sum, the undisputed material facts establish that Thomas's actions with regard to preventing Payne's risk of suicide could not have exceeded gross negligence and rose to the level of deliberate indifference. Defendant Scott Thomas is therefore entitled to summary judgment as to Count I of Plaintiffs' Complaint.

**B.   Plaintiffs Cannot Establish That Eyerly-Ball Acted With Deliberate Indifference to Payne's Risk of Suicide**

Plaintiffs also allege that Defendants Madison County and Eyerly-Ball acted with deliberate indifference in failing to establish policies, practices, and procedures and/or failing to properly train, supervise, and/or discipline their employees regarding treatment of inmates such as Jordan Payne with serious and chronic mental health needs who present with significant risks for suicide and whom in fact commit suicide. (Complaint, ¶ 104; Dkt. No. 1). Plaintiffs are unable to produce any genuine issue of material fact as to whether Eyerly-Ball failed to properly train, supervise, or discipline its employees or failed to establish proper policies or procedures with respect to suicide prevention.

In addition to deliberate indifference claims against individuals, a second type of deliberate indifference claim is where the plaintiff alleges that a government entity's policy, custom, or procedure caused them to suffer a violation of their Eighth Amendment rights. Section 1983 of 42 U.S.C. creates a cause of action for persons whose constitutional rights are violated in the execution of governmental policy, custom, or official action. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). When the defendant is a government entity, the plaintiff must show the existence of a policy, custom, or action of those who represent official policy that inflicted an actionable injury. *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also Southworth v. Mo. Dep't of Corr.*, 258 F. App'x 917, 917 (8th Cir. 2007) ("To defeat CMS's summary judgment motion, Southworth had to create trialworthy issues as to whether there was a CMS policy, custom, or action by those who represent official CMS policy, that inflicted an Eighth Amendment injury."). A deliberate indifference claim based on

negligent hiring or training is another form of Eighth Amendment claim based on an entity's policies, customs, or procedures. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) ("Under this rubric, we recognize claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same.").

1. There is no Evidence That Eyerly-Ball Failed to Properly Train, Supervise, or Discipline Scott Thomas or any Other Employee With Respect to Suicide Prevention

Inadequate hiring or training of a government official may serve as the basis for section 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officials] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). According to the Supreme Court, "only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389. As summed up by the Eighth Circuit Court of Appeals, a city may be liable for deficient policies regarding hiring and training police officers where (1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by a municipality and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

It is necessary for the plaintiff to show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Andrews*, 98 F.3d at 1076 (*citing City of Canton,* 489 U.S. at 390). In other words, the plaintiff must demonstrate that the

city "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Andrews*, 98 F.3d at 1076.

First, Plaintiffs allege that Eyerly-Ball hired Scott Thomas despite the fact that he was unqualified for his position. According to Plaintiffs, "[d]efendant Thomas has an undergraduate degree in sociology and, despite his employment with Eyerly-Ball, the regions premier mental health services provider, was not a Qualified Mental Health Professional at the time he spoke with Jordan Payne." (Complaint, ¶ 68; Dkt. No. 1). Plaintiffs go on to assert that "[d]efendant Eyerly-Ball was aware of Defendant Thomas's lack of credentials and qualifications and despite this, hired and employed him to give mental health evaluations to some of society's most vulnerable citizens." (*Id.* at ¶ 69). Again, as discussed above, these allegations are based on the false premise that Thomas was hired to be a mental health professional and that "[p]art of Defendant Thomas employment duties with Eyerly-Ball was to provide mental health evaluations for those individuals housed at the Madison County Jail." (*Id.* at ¶ 67). The undisputed and indisputable facts show that Thomas is not a mental health professional, was not hired as a mental health professional, does not perform mental health evaluations, and that his involvement with inmates at the Madison County Jail is limited to ascertaining inmates' mental health needs and referring the inmates to the appropriate services. (*See* Defs' SOF, ¶ 7-18). He is a coordinator, not a provider. As such, Plaintiffs' attempts to show that Thomas is unqualified for a job he was not hired for are unavailing.

Scott Thomas was qualified for the job Eyerly-Ball hired him to perform: a Jail Diversion Case Manager. The qualifications for the position of Jail Diversion Case Manager are a bachelor's degree in a human services, social sciences, or related field, as well as two years

of experience in a human services field. (Defs' SOF, ¶ 20). At the time Scott Thomas applied for the Jail Diversion Case Manager position with Eyerly-Ball in 2015, he had a Bachelor of Science degree in sociology and many years of experience in the human services field dating back to the 1990's. (*Id.* at ¶ 21). Plaintiffs cannot raise a genuine issue of material fact as to Thomas's unfitness to be a Jail Diversion Case Manager.

Next, Plaintiffs assert that Eyerly-Ball failed to provide Thomas with the appropriate training relating to suicide prevention. Plaintiffs aver that "despite knowing he lacked the necessary and crucial background to perform his job, Defendant Eyerly-Ball did not provide Defendant Thomas with any specialized training related to mental health examinations/evaluations or suicide screening/prevention." (Complaint, ¶ 70; Dkt. No. 1).

To the contrary, there is a plethora of evidence showing that Thomas received extensive training and instruction in the area of suicide prevention. According to Monica Van Horn, the director of Eyerly-Ball's Crisis Services Department that oversees the Jail Diversion Program, suicide prevention training is an annual requirement for continued employment with Eyerly-Ball for all employees. (Defs' SOF, ¶ 22). Thomas received a Certificate of Completion indicating that he successfully completed the Eyerly-Ball Annual Training in 2018. (*Id.* at ¶ 23). Additionally, Thomas successfully completed the Applied Suicide Intervention Skills Training (ASIST) workshop in 2019. (*Id.* at ¶ 24). Further, in 2016, Thomas completed the requirements for the Nonviolent Crisis Intervention Instructor Certification Program, which allowed him to instruct the Eyerly-Ball Staff on issues relating to crisis intervention. (*Id.* at ¶ 25). In fact, Thomas was at one time a Master-Level Instructor for the Crisis Prevention Institute, which involves instruction on suicide prevention and intervening in suicide situations. (*Id.* at ¶ 26-

19

27). The notion that Thomas lacks proper training related to suicide prevention is wholly contrary to the undisputed facts. Moreover, it wasn't part of his job duties, so Plaintiffs' claim lacks any merit, whatsoever.

Thus, Thomas is more than sufficiently qualified for his position and he is sufficiently trained with respect to suicide prevention, even though that is not within the scope of his job duties. Under these circumstances, Plaintiffs simply have no basis to establish a deliberate indifference claim against Eyerly-Ball based on improper hiring or training of Scott Thomas. Nor have Plaintiffs produced any evidence of specific hiring or training practices of Eyerly-Ball that are inadequate or that contributed to Payne's death. Therefore, Plaintiffs do not have a valid improper hiring or training deliberate indifference claim against Eyerly-Ball. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

2.  There is no Evidence That Eyerly-Ball Carries Out a Policy or Custom With Deliberate Indifference to Jail Inmates' Risk of Suicide

As discussed, Section 1983 of 42 U.S.C. creates a cause of action for persons whose constitutional rights are violated in the execution of governmental policy, custom, or official action. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). There are two basic circumstances under which municipal liability will attach with regard to a policy: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Moyle v. Anderson*, 571 F.3d 814, 817-818 (8th Cir. 2009). "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such

matters." *Bechtel v. City of Belton*, 250 F.3d 1157, 1160 (8th Cir. 2001). A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights. *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir.1999). "Further, the plaintiff must prove that the policy was the 'moving force' behind a constitutional violation." *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016).

With regard to customs, "[a] municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled ... as to [have] the force of law." *Russell v. Hennepin Cnty.*, 420 F.3d 841, 849 (8th Cir. 2005). An actionable custom requires: 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation. *Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 646 (8th Cir. 1990). Thus, liability may not be imposed on a government entity for a single instance of a constitutional violation by one of its employees. *McGautha v. Jackson County,* 36 F.3d 53, 57 (8th Cir.1994) ("Liability for an unconstitutional custom or usage ... cannot arise from a single act."). Nor may liability be imposed for constitutional violations that are unknown to the government entity. *P.H. v. Sch. Dist. of Kansas City,* 265 F.3d 653, 659 (8th Cir.2001) ("[A governmental entity] may not be found to have been deliberately indifferent to or to have tacitly authorized conduct of which it was unaware.").

In this matter, Plaintiffs have not identified any policy or custom adopted by Eyerly-Ball that amounts to a deliberate indifference to the risk of suicide. Plaintiffs have produced expert testimony critical of Madison County's policies and procedures. However, nowhere in Plaintiffs' Complaint, discovery materials, expert disclosures, or elsewhere is there any allegation that an Eyerly-Ball policy or custom exhibited deliberate indifference to jail inmates in general or Payne in particular. Plaintiffs deliberate indifference claim against Eyerly-Ball appears to be based entirely on assertions of improper hiring and training of Scott Thomas, which as shown above, are without merit. Therefore, Eyerly-Ball is entitled to summary judgment with respect to Count II of Plaintiffs' Complaint.

## C. Even if Scott Thomas or Eyerly-Ball Acted With Deliberate Indifference, Plaintiffs Cannot Establish That Such Deliberate Indifference Caused Payne's Death

An essential element of any type of Eighth Amendment deliberate indifference claim is causation. Plaintiffs claiming an individual acted with deliberate indifference must establish a causal connection between the alleged deliberate indifference and the resulting injury in order to establish a prima facie violation of the Eighth Amendment. *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002). Similarly, plaintiff's claiming deliberate indifference based on inadequate policies or customs, including inadequate hiring or training policies, must establish that such policies caused the plaintiff's injury. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)(plaintiff must show that an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury); *Monell,* 436 U.S. at 694, 98 S.Ct. 2018 (holding that official policy must be "the moving force of the constitutional violation" in order to establish the liability of a government body under § 1983); *Tilson v. Forrest City Police Dep't.,* 28 F.3d 802, 807

(8th Cir.1994) (*Tilson*) ("[A] government custom of laxness or inaction must be the moving force behind the constitutional violation.").

Here, Plaintiffs cannot show that any action on the part of Scott Thomas or Eyerly-Ball caused Payne's death by suicide given that the Madison County Jail was already aware of the types of suicidal signs or risk factors that Payne exhibited in his screening interview with Thomas before Thomas even met with Payne. In other words, at the time Thomas conducted his screening interview with Payne, Madison County Jail staff were already aware of all potential suicide risk factors or symptoms that Thomas became aware of during his interview with Payne. (*See* Defs' SOF, ¶ 44-47). According to Plaintiffs' Complaint, During the interview with Thomas on June 12, 2020, Jordan Payne made the following statements:

a. "I'm not doing so well, I lost everything, girlfriend, jeep, house. Going to be homeless."
b. "I gave myself a black eye. I'm hearing these fucking things in my head, all sorts of stupid shit I'm not trying to listen to it."
c. "I'm not in good shape right now."
d. "Like I'm getting these thoughts in my head, shit like that."
e. "I've got these thoughts in my head that are like chew my veins out and I mean shit like that."
f. "I've had seven suicide attempts in the last year."
g. "I've got nothing left."
h. "I can't sleep, there's nothing I can do. I'm sitting there and I'm just thinking and then I'm hearing shit and I tell it to go away, hence the black eye."
i. "I want to start fucking slapping myself or start hitting myself." (Complaint, ¶ 72; Dkt. No. 1).

Plaintiffs also assert that "Jordan Payne was physically and demonstrably agitated during his interview with Defendant Thomas." (*Id.* at ¶ 73). As discussed above, the only potentially legitimate basis for Plaintiffs' deliberate indifference claim against Thomas is that he allegedly failed to convey such suicidal indications to Madison County Jail staff and request additional supervision for Payne.

However, Madison County Jail staff were well aware of these same statements and behaviors exhibited by Payne prior to the time that Thomas made his first contact with Payne. While being booked into jail on June 9, 2020, Payne responded to intake screening questions from jailers wherein he indicated that he had mental illness, had previously tried to hurt himself, had previously tried to kill himself, and had a family member or friend previously commit suicide. (*Id.* at ¶ 28). According to Plaintiffs' Complaint, "[p]rior to June 9, 2020, Jordan Payne had a documented history of suicide attempts and suicidal ideations, known to the Madison County Sheriff's Department. (*Id.* at ¶ 29). Indeed, the Madison County Sheriff's Department was aware of several suicide attempts by Payne, either while he was in their custody or as a result of responding to his suicide attempt. (*Id.* at ¶¶ 32-34). Further, Madison County Jail staff were specifically informed by Plaintiff Leslie Payne that Payne was "going nuts" and that he was threatening self-harm by stating he wanted to "chew the veins out of his arms." (*Id.* at ¶¶ 55-56).

Accordingly, the comments Payne made to Thomas during the screening interview regarding prior suicide attempts and mental illness, the fact that he was "freaking out" and wanted to "chew his veins out," and the fact that Payne was agitated were all things that the Madison County Jail was specifically aware of prior to Thomas's involvement with Payne. They continued to be aware of those facts after Thomas's interview with Payne, when Payne was returned to their exclusive supervision. Thus, even if Thomas would have notified the jail staff of each and every detail of his interview with Payne, he wouldn't have provided them with any information they didn't already know. It defies logic to suggest that Thomas's failure

to notify jail staff that Payne was exhibiting alleged suicidal indications somehow caused Payne's death by suicide when the jail staff was already aware of the same information.

Similarly, it cannot be said that any policy or custom of Eyerly-Ball was the "driving force" behind the alleged deprivation of Plaintiffs' Eighth Amendment rights because it was Madison County Jail's decision whether or not to place Payne under additional supervision and neither Thomas nor Eyerly-Ball were tasked with or authorized to play any role in such determinations. Therefore, Defendants Scott Thomas and Eyerly-Ball are entitled to summary judgment on Counts I and II of Plaintiffs' Complaint for the additional reason that Plaintiffs cannot establish the essential element of causation.

### III.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' REMAINING CLAIMS

Should the Court grant these Defendants' motion with respect to Plaintiffs' Federal Constitutional claims, this Court should decline to exercise its supplemental jurisdiction over Plaintiffs' negligence and wrongful death claims, which are based on state law. *See* 28 U.S.C. § 1367(c)(3). "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if (3) the district court has dismissed all claims over which it has original jurisdiction. *Id.* If the Court dismisses those claims over which it has original jurisdiction, there is no reason it should maintain the balance of the case. *See* 28 U.S.C. § 1367(d).

<u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Partial Summary Judgment, dismiss Counts I and II of Plaintiffs' Complaint, and decline to exercise its supplemental jurisdiction of any remaining state law claims, as well as grant any additional relief the Court deems just and proper.

_/s/ Joseph F. Moser_

Jack Hilmes                    (AT0003523)
Joseph F. Moser              (AT0011413)
FINLEY LAW FIRM, P.C.
699 Walnut Street, Suite 1700
Des Moines, IA  50309
Telephone:  (515) 288-0145
Fax:  (515) 288-2724
E-mail:  jhilmes@finleylaw.com
            jmoser@finleylaw.com
ATTORNEYS FOR DEFENDANTS
EYERLY-BALL COMMUNITY MENTAL
HEALTH SERVICES and SCOTT THOMAS

Original filed.

Copy to:

Robert G. Rehkemper
Cory F. Gourley
440 Fairway Drive, Suite 210
West Des Moines, IA 50266
Telephone: (515) 226-0500
Email: rgrehkemper@grllaw.com
cfgourley@grllaw.com

Paul J. Statler
301 East Walnut Street, Suite 7
Des Moines, Iowa 50309
Telephone: 515.288.
Email: paul@statlerlaw.net
ATTORNEYS FOR PLAINTIFFS

Michael C. Richards
Katie E. Anderegg
DENTONS DAVIS BROWN PC
215 10th Street, Suite 1300
Des Moines, Iowa 50309
Telephone: (515) 288-2500
Fax: (515) 243-0654
Email: mike.richards@dentons.com
Email: katie.anderegg@dentons.com

ATTORNEYS FOR DEFENDANTS
JOHN WEAKLAND, JASON BARNES,
AND MADISON COUNTY, IOWA

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on February 14, 2023 by:

☐ U.S. Mail            ☐ FAX
☐ Hand Delivered       ☐ UPS
☐ Federal Express      ☒ Electronic Filing
☐ Other _____

*/s/ Joseph F. Moser* _____